Our next case this morning is Williams v. Saul. Good morning, Mr. Schultz. Good morning, Your Honors. May it please the Court, Barry Schultz on behalf of the appellant, Darius Williams. Whether or not Mr. Williams voluntarily waived his right to counsel, the ALJ had a duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. The issue in this case is did the ALJ meet that obligation in the questioning or failing to question the vocational expert on various issues. The first point is a somewhat hybrid because Social Security Ruling 00-4P requires administrative law judges to ask the vocational expert whether or not their opinion is consistent with the information in the Dictionary of Occupational Titles. And in this case, it's clear that the ALJ did not ask the vocational expert that question. So then under this Court's holding in Prochaska v. Barnhart, if there is an apparent conflict with the Dictionary of Occupational Titles, reversal and remand is required. And it's not updated? Is that what the problem is? Well, that's one of the problems, Your Honor, is that for the jobs mentioned by the vocational expert in this case, the descriptions of the jobs were 40 years old. But the first point I was making was about this ruling, which the ALJ didn't meet his mandated obligation. You mean because of the obvious inconsistency between your client's mathematical ability and the mathematical qualifications described in the Dictionary? Well, that wasn't the point I was making, although that is one of the points we argued in the brief. The first area we were talking about is the reasoning level that's in the Dictionary of Occupational Titles. That for two out of the three jobs, there's a reasoning level of two, which requires the ability to handle detailed instructions. And a reasoning level of one is for one- to two-step instructions. And in our case, the ALJ found the claimant could only handle one- to two-step tasks, which is actually more restrictive than being able to handle one- to two-step instructions. But at most, the claimant would be able to handle reasoning level one jobs. And only one of the three jobs that the vocational expert testified to was a reasoning level one job. But then another very important point, plaintiff believes, is the fact that the ALJ, having this heightened duty, especially for a cognitively impaired claimant, would be to ask the vocational expert when the jobs were last updated in the Dictionary of Occupational Titles. And then once the ALJ determined how long it had been, again in this case almost 40 years, the ALJ then should ask the vocational expert if the job is currently done in the same manner that it was done 40 years ago. And if not, how is it currently done, and how does the vocational expert know that? Is this the case for every job description in the dictionary? Is it all exactly 40 years old? No. It's all very outdated. I think 1991 is the most recent time that any of the jobs were updated. So some were updated. They were updated at different times. That's correct. So it's these particular ones, the question would be how outdated are these? And the ALJ wouldn't know that? It wouldn't realize the age of the descriptions? Well, the ALJ may not know exactly. If the ALJ doesn't go and look at the Dictionary of Occupational Titles for the specific jobs the vocational expert mentioned, he probably wouldn't know that. But he would know that they were outdated and therefore should have an obligation to ask the vocational expert, well, how are they currently done? Because at Step 5, it's the commissioner's burden to establish that the claimant can actually perform these jobs. So how those jobs are currently done is critical. The one reasoning level one job here is actually someone who assembles traverse curtain rods. And the question is, in the last 40 years, for instance, has that job become automated? Do people have to use computers? Are robots doing that work? There's all kinds of questions as to how the job is currently done that the ALJ should have at least minimally inquired of the vocational expert before finding that the claimant can actually perform these jobs. Well, it seems that one of the central things that you're talking about is, I'll call it math, adding and subtracting and that sort of thing. And reflecting back, you've been in this business a long time too. I have. There's an expert anywhere about whatever changes there are. But it seems that there is some focus here that his inability to basically add and do something very basic is a big limitation, and that means further exploration, and maybe like what? That's correct, Your Honor. I mean, the ALJ should have asked the vocational expert whether somebody with the limited math abilities of Mr. Williams, whether they could actually meet the requirements of the jobs in question. Every job has a mathematics requirement in these general education development in the Dictionary of Occupational Titles. Now, it's possible that some jobs actually don't require a person to use any math on the jobs. And so the vocational expert could testify to that, that although the Dictionary of Occupational Titles has a math requirement, certain jobs actually don't require the ability to use math. But again, if you even look at the description of this traverse rod assembler, it says the person might have to measure and cut the cord to assemble the rod. Well, that requires some knowledge of inches or feet, maybe even yards, depending on how long the cord is. A Mathematic I development level requires a basic knowledge of inches and feet and yards. So the ALJ should have made that inquiry of the vocational expert. Really, overall, what happened in this case, the ALJ asked a hypothetical question. The vocational expert said there were jobs. The ALJ followed up asking about off-task time and pace and then ended the hearing without doing any follow-up to determine whether the vocational expert's testimony was reliable. Another point that we raised was on the question of numbers of jobs because this court, in several cases, has questioned the reliability of vocational expert testimony as to how they determine the numbers of jobs. And I didn't put this in the briefs, but in preparing for the argument, I did a very quick calculation. The vocational expert here said there were 225,000 people employed assembling traverse curtain rods. And just making up a number, but conservative, if a person had to assemble 10 curtain rods in an hour, doing the math for 240 days a year, 200,000 people doing that job, they'd be assembling over 5 billion curtain rods a year in the United States. One of the other jobs here was packing gas masks. And the vocational expert said there were 400,000 people in this country packing gas masks. And again, that should have given the ALJ pause to ask further questions of the vocational expert. But when you're doing repetitive jobs, I don't know what else you call it, whether it's for curtains or what have you, once you have something that is of a proper length, you don't need to get out a tape measure. You just have to, it's got to be the same length as this, you know. Well, we don't really know that because the vocational expert wasn't asked. There might be, there's lots of different sizes, Your Honor. So a person might in the course of a day be making, assembling curtain rods of different sizes, so they would have to measure each time. And I guess that's the question. I don't know what, when you talk about repetitive things. Right. But even repetitive jobs like in assembly jobs, they change throughout the course of a week or a day. A person might be assembling a different type of rod, something like that. Do you want to save some time? Yes, Your Honor. Thank you. Thank you. Mr. James. May it please the Court. Good morning. Good morning, Your Honors, Mr. Schultz, ladies and gentlemen. Daniel Robert James on behalf of the commissioners. Your Honor, there's a reason Mr. Williams doesn't want to talk to you today about the evidence. That's because Mr. Williams is 25 years old and a high school graduate. He wants to work. Every doctor in the record finds he can work. And there's virtually no medical treatment for his impairments. The evidence supports only one conclusion, and that is that he is disabled. Now, Williams wants you to ignore the evidence, and he wants to throw the kitchen sink at you, outlining what are no more than obscure technicalities at Step 5. But these do not disturb the ALJ's decision. Wait, wait, wait. I mean, obscure technicalities, whether the dictionary of occupational titles actually matches what he can do. Can you address counsel's arguments about asking the V.E. whether these jobs 40 years later still require the same requirements or given the disparity in reasoning level or mathematical ability? Yes, I can, Your Honor. And that is that there's no authority from this Court that the ALJ needs to prove that the jobs are performed today as historically. And what Mr. Williams directs you to really is just his own reading of the DOT. The ALJ, on the other hand, relied on the vocational expert, Ms. Carrie Seaver. She's a 2008 graduate of the University of Iowa. She got a master's degree in vocational rehabilitation. She's devoted her career to placing workers. She knows her stuff. Williams just references his own interpretation of the DOT, and he's no more qualified than you or I on that matter. Now, his arguments boil down to three basic areas. The first is development of the record. And for him to prevail, he needs to show a significant omission. This Court said in the case of Nelms that that significant omission was a two-year evidentiary gap. In Ferguson, a failure to ask about impairments, and in other cases about outdated medical opinions. And that's not the case here. The ALJ sent Mr. Williams for a second consultative examination, and he had a psychological medical expert at the hearing who not only reviewed the evidence but actually asked Mr. Williams questions at the hearing. Now, what Williams doesn't want to talk about this, he wants instead to look only to Step 5 and things that this Court has never found to be a significant omission. He cites no authority in his first brief. And then in his reply brief, he directs you to out-of-circuit, unpublished district court cases where there was no valid waiver, unlike this case where there is a valid waiver. Now, your honors of the Seventh Circuit are not bound by a 1994 Eastern District of Louisiana unpublished decision. Well, given his mathematical ability and given his reasoning level, why wasn't it error for the vocational expert to say that he could perform jobs that required greater mathematical ability and a greater reasoning level? Well, your honors, the mathematical ability is not actually, that's more of a challenge to the RFC. That's not a conflict at Step 5. Because the mathematical development level of 1 requires you to add and subtract two-digit numbers and to make change out of a dollar. Well, at his consultative examination, Williams did just that. He added and subtracted two-digit numbers at his consultative examination in 2011. And his aunt said that he can count change, which is higher than the mathematical developmental level of 1, which is just make change out of a dollar. Now, recall that because it's the RFC, the ALJ doesn't need to definitively prove that Williams can do this. He just needs to show that a reasonable adjudicator could look at this evidence and agree. And in addition, the record shows that Mr. Williams was a high school graduate. He passed all of his math classes, and these were in the general education, not in the special education, except for one, and he twice earned an A in economics. Your honors, that is substantial evidence that supports that Williams did have the ability. What about his 64 IQ? Yes, he did, but there's also other evidence in the record as well. He's a high school graduate. He performed, he was able to do the math work, because we're talking not necessarily what his IQ is, but what are his math abilities here. And it should also be noted that the DOT, the math developmental level of 1 is the lowest level. There's no math development level of 0. There's no negative math developmental level. And that's one of the problems with the DOT, is the DOT simply outlines the, it does not coincide in every aspect with the job. And there's nothing in the three jobs listed at step 5 that suggests that he would need math abilities. So the DOT outlines the maximum, and it warns itself. The DOT says we may not coincide with every aspect of the job, and you should look to other sources. And here the ALJ did just that. He talked to the vocational expert, and the vocational expert knew the math levels and found that Mr. Williams could perform these jobs. I don't know anything about the, I assume this is some sort of special ed graduate. When you say he graduated from high school and had, I think you said somewhere in your brief, where he passed a whole bunch of tests. I assume that that's at some sort of a level for someone with an IQ that level. That's why when you say he's a high school graduate and these other things, it's not the equivalent of a mainstream person. That's correct, Your Honor, but he took special education courses and only two courses, which were. Really? Yes. Everything else he's in with the other students? Pardon me? He's in with the regular students. Correct. That's correct. In math, he's with the regular students. In economics, where he's earned an A twice, he's with the regular students. So he only has two courses that the reading of the transcript shows that he was in special education. The rest he's in regular general education courses. Well, can he read? Yes, he can read. In fact, he testified that he enjoys reading. He enjoys reading history books, and he enjoys reading religious books. And as for the reasoning development level, Williams ignores that there's 260,000 jobs with a reasoning development level of one that he could perform. 260,000 will be significant in any circuit in the nation here. And now we're not conceding that reasoning development level of two is inconsistent with simple one- to two-step tasks. In fact, to the extent that it would be an inconsistency, it has to be an apparent one. This court defines apparent conflict as so obvious that the ALJ would have picked up on it without assistance. The court has said it should send alarm bells ringing in the ALJ's mind. That's not what this is. This is one when an attorney briefs the case for 40 hours and comes to the DOT, they can unearth it. And again, the DOT does not coincide in every aspect and directs the ALJs to look at for other evidence, such as vocational expert, which is what we had here. Now, the other challenge that Williams makes is the challenge to the Dictionary of Occupational Titles and the vocational expert. What he does is he misreads Chavez v. Berryhill. Now, he claims that Chavez stands for that the V.E. testimony is presumptively flawed and that it must be rehabilitated, that the sources that the V.E. uses. But that's not true. Chavez held two things. First, it said that when the V.E. is asked that the ALJ must elicit a reasoned and principled explanation about the sources and data. And it also said that it intends no new obligations, which is what Mr. Williams wants you to find here today, that the data and sources are presumptively invalid and that they must be rehabilitated. Now, no one asked questions here at the hearing, and there's nothing to show that the sources or data that the V.E. relied on were unreliable and that this is not a case like in Chavez where it required four explanations, and even then there was nothing to give the court assurance that the data was reliable. Now, Mr. Williams notes that he did not have the opportunity to question the V.E., but that's not entirely accurate, and it's harmless otherwise, because at the end of the hearing the aunt said, hey, can I say something? And the ALJ said yes, and she ended up directing her statement to the ALJ and not the V.E. But even if that wasn't enough, in his brief he repeatedly concedes that it would not have made a difference if he was able to ask the questions because he said he wouldn't have had the know-how. So he forfeits the argument. And remember that there is value in waiving an attorney. The negative side is that your attorney won't be able to grill the V.E., but the positive side is $6,000 that could have gone to Mr. Williams would have gone to his attorney instead. For some claimants, that's a year of rent. For others, that will pay off all the medical bills and all the outstanding credit card bills. So there is a positive to foregoing an attorney. In closing, Mr. Williams is 25 years old. He wants to work. He wants to go work with his uncle at the city of Chicago, and every doctor in the record says that he can work. In fact, his aunt says he's a good worker. He's had almost no medical treatment for his conditions. For an ALJ to find him disabled, the ALJ has to set aside every opinion of the record and has to ignore that he basically has no medical treatment for his conditions to find it. What counsel raises really are just nitpicky technicalities that don't show, that are not conflicts because they're just challenges to the RFC, and the one that might be considered a conflict, the reasoning development level of 2, it washes away when there's 260,000 jobs with a reasoning development level of 1, something he does not challenge. The correct result here, and the only result, is to affirm. And unless your honors have any other questions, I'll close. Thank you, counsel. Thank you. Mr. Schultz, rebuttal. This isn't really a question of the doctor saying that Mr. Williams can work. The question is, based on the limitations that the medical expert found that the ALJ adopted, can the claimant sustain work? That goes back to the reliability of the vocational expert's testimony. It's true that this court hasn't yet ruled on what an ALJ's obligation is in terms of questioning a vocational expert for an unrepresented, cognitively impaired claimant. That's something we're asking the court to discuss and rule on in this case. The claimant reads at a fourth grade level, Your Honor. If you look at page 336 of the record, it's actually confusing what classes the claimant was in. If you look at page 336, it says the claimant was tried in what they call a CTT class, which is a class that has disabled and regular general students. And the teacher said that Mr. Williams was completely confused, had no chance of passing his classes, so he was put in a separate. What about this whole he got an A in economics? He did get an A in economics. There's something in the record, I don't have the site, that actually shows he was on a different scale. Like I know a D was from a 40 to a 54, and so the scale was skewed for him. I don't know what happened with those economic classes. Counsel talks about it has to be an obvious error, but that's in the Overman case where the ALJ asked the vocational expert whether the testimony was consistent with the DOT, where in our case the question was not asked under Prochaska, the case should be remanded. Thank you, Your Honor. Thank you, Counsel. The case is taken under advisement.